IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**CASY CARLTON, JONATHAN JONES**                                    **PLAINTIFFS**
**and BOBBY HARRISON**

vs.                              No. 4:17-cv-76-KGB

**JHOOK INVESTMENTS, INC., d/b/a**                             **DEFENDANTS**
**JHOOK TOWING AND RECOVERY;**
**JEFF HOOKER and IVY HALL, INC.**

## RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

COME NOW Plaintiffs Casy Carlton, Jonathan Jones and Bobby Harrison, by and through their attorneys Joshua West and Josh Sanford of Sanford Law Firm, PLLC, and for their Response to Defendants' Statement of Facts, state:

1.      Plaintiff Casy Carlton ("Carlton") was employed by Defendant JHook from February 2016 to February 2017 as a tow truck driver. Deposition of Casy Carlton, attached as **Exhibit A**, at 9:1-9:5.

**RESPONSE NO. 1:**  Plaintiffs agree with this legal conclusion.

2.      Plaintiff Jonathan Jones ("Jones") was employed by Defendant JHook from April 2016 to February 2017 as a tow truck driver. Deposition of Jonathan Jones, attached as **Exhibit B**, at 7:5-7:7.

**RESPONSE NO. 2:** Admitted.

**Page 1 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

3.      Plaintiff Bobby Harrison ("Harrison") was employed by Defendant JHook from March 2015 to February 2017 as a tow truck driver. Deposition of Bobby Harrison, attached as **Exhibit C**, at 6:3-6:8.

**RESPONSE NO. 3:**  Plaintiffs agree with this legal conclusion.

4.      JHook is a towing and wrecking company that operates in North Little Rock, Arkansas. Deposition of Jeff Hooker, at 8:17-8:19.

**RESPONSE NO. 4:** Admitted.

5.      Tammie Moody ("Mrs. Moody") has been employed as a dispatcher for JHook for five years. Declaration of Tammie Moody, attached as **Exhibit D**, at ¶ 3.

**RESPONSE NO. 5:** Admitted.

6.      Tim Moody ("Mr. Moody") is the general manager at Ivy Hall and JHook, he has been in the towing business for thirty-eight years. Declaration of Tim Moody, attached as **Exhibit E**, at ¶¶ 3-4.

**RESPONSE NO. 6:** Admitted.

7.      Jim Heverly ("Heverly") is employed by JHook and has been a tow truck driver for the company for five years. Declaration of Jim Heverly, attached as **Exhibit F**, at ¶ 3.

**RESPONSE NO. 7:** Admitted.

8.      Steve Wilkinson ("Wilkinson") is employed by JHook and has worked as a tow truck driver at the company for two and a half years. Declaration of Steve Wilkinson, attached as **Exhibit G**, at ¶ 3.

**RESPONSE NO. 8:** Admitted.

**Page 2 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

9.      Sean Miller ("Miller") has been employed by JHook as a tow truck driver for one and a half years, although he worked for the company five years ago as well. Declaration of Sean Miller, attached as **Exhibit H**, at ¶ 3.

**RESPONSE NO. 9:** Admitted.

10.     Tony Martin ("Martin") has been employed by Ivy Hall as a tow truck driver for eight years. Declaration of Tony Martin, attached as **Exhibit I**, at ¶ 3.

**RESPONSE NO. 10:**     Admitted.

11.     Ivy Hall is a separate towing and wrecking company that operates in Jacksonville, Arkansas. Hooker Dep. at 9:3-9:4.

**RESPONSE NO. 11:**     Denied.   Ivy Hall and JHook were under common ownership.  Hooker Dep. 7:11–14 (stating that his business is JHook Investments), 8:6–7 (admitting that he owns Ivy Hall).  Tim Moody was the general manager for both Ivy Hall and JHook.   Carlton Dep. 29:15–30:13 (explaining that Tim Moody was the manager for both companies); *see also* Hooker Dep. 10:9–18 (stating that Hooker purchased JHook from Jim Glover), 14:14–17 (stating that Tim Moody is the general manager), 23:9–10 (stating that Mr. Moody is the manager for Ivy Hall), 23:13–15 (stating that Tim Moody was working for Jim Glover when Hooker purchased JHook). Tim Moody transferred Carlton from Ivy Hall to JHook.  Carlton Dep. 29:15–30:13. JHook and Ivy Hall shared employees.  Hooker Dep. 21:12–23.  JHook dispatchers dispatched Ivy Hall drivers, Hooker Dep. 22:22–25, and Ivy Hall dispatchers dispatched JHook drivers, Hooker Dep. 23:1–8 (stating that it had to be approved, but could be approved by a dispatcher).

**Page 3 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

Mr. Moody and Mr. Hooker, manager and owner of both JHook and Ivy Hall, had the power to fire drivers.   Hooker Dep. 19:20–25.   Mr. Moody hired truck drivers. Hooker Dep. 20:2–5.  Mr. Moody fired truck drivers.  Hooker Dep. 20:9–17.  Mr. Moody and Mr. Hooker both set the method and manner of pay for both JHook and Ivy Hall drivers.  Hooker Dep. 26:17–22.

12.     Jeff Hooker is the owner of both JHook and Ivy Hall, although they are two separate entities. Hooker Dep. at 8:2-8:7.

**RESPONSE NO. 12:**     Admitted that Jeff Hooker is the owner of both JHook and Ivy Hall.  Objection to the remainder of the allegations as irrelevant, and denied that JHook and Ivy Hall are not joint employers under the FLSA.  *See* Response No. 11, *supra*.

13.     JHook and Ivy Hall are two separate companies, they do not share bank accounts and they are not located at the same facilities. Hooker Dep., at 21:5-21:11.

**RESPONSE NO. 13:**     Denied as written because JHook and Ivy Hall are joint employers under the FLSA.  *See* Response No. 11, *supra*.

14.     JHook has fifteen employees and Ivy Hall has three employees. Hooker Dep., at 24:5-24:7; Hooker Dep., at 27:13-27:22.

**RESPONSE NO. 14:**     Admitted.  The inference that JHook and Ivy Hall are not joint employers under the FLSA is denied.  *See* Response No. 11, *supra*.

15.     The Plaintiffs were paid either an hourly rate or a flat weekly rate, plus a commission for calls. Harrison Dep., at 6:17-6:19; Carlton Dep., at 11:10-11:23; Jones Dep., at 7:11-7:14.

**Page 4 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

**RESPONSE NO. 15:**      Admitted, but the inference that they were paid properly for all hours worked is denied.

16.    The regular work schedule for tow truck drivers is 8:00 a.m. to 5:00 p.m., with a one hour lunch. Mrs. Moody Decl,, at ¶ 4; Mr. Moody Decl,, at ¶ 6; Heverly Decl,, at ¶ 4; Wilkinson Decl,, at ¶ 4; Miller Decl,, at ¶ 6.

**RESPONSE NO. 16:**      Denied.  Carlton Dep. 10:12–16 (stating that he ate on the go); Jones Dep. 22:4–14 (stating that only thirty minutes was scheduled, but he rarely ever got the full thirty minutes for lunch); Harrison Dep. 13:11–14:11 (stating that he usually ate on the go).

17.    Each of the Plaintiffs allege that they worked unpaid overtime, although the amount of alleged unpaid overtime worked differs amongst the Plaintiffs. Harrison Dep., at 7:12-7:24; Jones Dep. at 27:25-28:18; Carlton Dep., at 13:17-13:22. Plaintiffs estimate they worked an average of 14 to 21 hours of unpaid overtime. Harrison Dep., at 7:12-7-24; Jones Dep. at 27:25-28:18; Carlton Dep., at 31:10-31:15.

**RESPONSE NO. 17:**      Admitted.

18.    None of the employees ever discussed the issue of the alleged unpaid overtime with Jeff Hooker. Harrison Dep., at 9:18-9:19; Carlton Dep., at 12:5-12:8; Hooker Dep., at 60:13-60:15.

**RESPONSE NO. 18:**      Admitted.

19.    The Plaintiffs did not speak to Jeff Hooker about the alleged unpaid overtime despite Jeff Hooker's open-door policy and the Plaintiffs' conversations with Jeff Hooker about other matters. Harrison Dep., at 9:20-11:17; Hooker Dep., at 67:20-

**Page 5 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

68:4. But, Plaintiffs never complained to Tim Moody about the allegations in this lawsuit. Harrison Dep., at 9:8-9:17; Carlton Dep., at 15:2-15:10; Jones Dep., at 29:23-30:3.

**RESPONSE NO. 19:** Denied to the extent that these allegations state facts beyond what was said in the depositions. *See* Jones Dep. 9:2–25 (explaining that he complained about his pay not being calculated correctly). Also, Plaintiffs object because this issue is irrelevant.

20. Plaintiffs allege they never complained to any superiors, other than their supervisor, Tim Moody, about their pay. Harrison Dep., at 11:18-11:21; Harrison Dep., at 16:3-16:6.

**RESPONSE NO. 20:** Denied to the extent that these allegations state facts beyond what was said in the depositions. *See* Jones Dep. 9:2–25 (explaining that he complained to both Tim Moody and Jeff Hooker about his pay not being calculated correctly). Also, Plaintiffs object because this issue is irrelevant.

21. Tim Moody does not recall speaking to the three Plaintiffs about the concerns in this lawsuit, but it is likely that Mr. Moody worked with the Plaintiffs to cure other concerns or errors regarding pay. Mr. Moody Decl., at ¶¶ 14-16.

**RESPONSE NO. 21:** Objection to the extent that Moody's lack of memory is irrelevant. The factual allegations are also denied. Tim Moody told Harrison that he paid Plaintiffs' only the time that he thought they should be paid. Harrison Dep. 8:14–9:14. If drivers needed a lunch and told Mr. Moody or dispatch, they would tell the drivers to "take it on the go." Harrison Dep. 22:9–21. Carlton never said anything about his pay stub because he thought he would be fired if he did. Carlton Dep. 12:5–8. Carlton's impression of Mr. Moody was that it was Mr. Moody's way or the highway.

**Page 6 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

Carlton Dep. 12:9–13:7.  Carlton was fired after bringing up that Defendants failed to withhold proper taxes from his checks.  Carlton Dep. 12:25–13:7.  Jones testified that, when he complained about all his hours not being on a check, Tim Moody or Jeff Hooker would tell him that they would make it up on the next check, but then would fail to follow through.  Jones Dep. 11:18–12:1.

22.    Harrison admits that he received paid time off for a trial for a traffic accident, he believes he was paid for four or five hours of work even though he was not working for JHook while at the trial. Harrison Dep., at 14:22-15:17.

**RESPONSE NO. 22:**    Admitted, but the inference that this occurred on more than one occasion is denied.   *See* Harrison Dep. 15:21–23.  Also, Mr. Moody told Harrison that he would take it off of Harrison's vacation.  Harrison Dep. 15:10–15:17.

23.    Harrison admits that Defendants either pay hourly or on commission, depending on what is best for the driver in that given pay period. Harrison Dep., at 19:6-19:10.

**RESPONSE NO. 23:**    Denied.  Harrison said that it was whichever type of pay is worse for the driver.  Harrison Dep. 19:6–19:10.

24.    Wilkinson has stated that he makes more money when paid by commission than he would if he was paid a one and a half times his hourly rate. Wilkinson Decl., at ¶ 7.

**RESPONSE NO. 24:**    Admitted that Wilkinson stated this in his declaration. All other allegations are denied.

25.    Plaintiffs do not identify discrepancies in multiple pay periods where hours were reported to Moody, even in pay periods where there are small amounts of paid

**Page 7 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

overtime when the Plaintiffs claim they regularly worked over ten hours of unpaid overtime in a given pay period. Harrison Dep., at 19:19-20:16.

**RESPONSE NO. 25:**      Denied to the extent that these allegations state facts beyond what was said in the depositions.

26.      Plaintiffs claim they should have been paid overtime because they did not take their hour lunch despite both companies having policies for all employees to take hourlong lunches; still, only Harrison, on a single occasion, told Moody that he had worked through lunch. Harrison Dep., at 21:14-22:21.

**RESPONSE NO. 26:**      Denied.  Defendants told drivers to take their lunch "on the go."  Harrison Dep. 22:9–21.

27.      If a call interrupts a driver's lunch, the driver is supposed to finish their lunch later in the day while the driver is paid for time worked during the typical lunch break period. Mrs. Moody Decl., at ¶ 5; Heverly Decl., at ¶ 5; Mrs. Moody Decl., at ¶ 5; Wilkinson Decl., at ¶ 8; Miller Decl., at ¶ 7.

**RESPONSE NO. 27:**      Denied.  Defendants told drivers to take their lunch "on the go."  Harrison Dep. 22:9–21.

28.      It is rare for a driver's lunch to be interrupted, and drivers typically only have their lunch interrupted for emergencies. Mrs. Moody Decl., at ¶ 6; Heverly Decl., at ¶ 14.

**RESPONSE NO. 28:**      Denied.

29.      None of the Plaintiffs have contemporaneous notes or records documenting their actual total hours worked beyond commission sheets. Harrison Dep.,

Page 8 of 13
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

at 23:20-23:25; Carlton Dep., at 13:8-13:10; Carlton Dep. 39:16-39:19; Jones Dep., at 12:25-13:7.

**RESPONSE NO. 29:**        Admitted.

30.    Each of the Plaintiffs can only provide general estimates based on memory as to their actual total hours worked. Carlton Dep., at 13:11-13:16; Carlton Dep., at 14:12-15; Jones Dep., at 12:15-12:24.

**RESPONSE NO. 30:**        Denied.   Plaintiffs could possibly provide more accurate hours worked if Defendants produced copies of the Commission Sheets.

31.    None of the Plaintiffs can remember more than the general estimates of hours worked over any given pay period. Jones cannot even remember if his work schedule was 8:00-5:00 or 7:00-4:00. Jones Dep., at 17:24-18:6. Jones admits that it is hard to remember how many hours were worked. Jones Dep., at 18:22-18:25.

**RESPONSE NO. 31:**        Denied.   Plaintiffs could possibly provide more accurate hours worked if Defendants were to produce the Commission Sheets.

32.    The Plaintiffs were required to record all of their actual hours worked on the commission sheets and the commission sheets serve as accurate records of time worked.   Harrison Dep., at 25:18-26:5; Hooker Dep., at 52:11-52:15; Hooker Dep., at 59:8-59:12.

**RESPONSE NO. 32:**        Denied.  Plaintiffs were told not to complete tickets for some jobs, Carlton Dep. 24:12–25:2; Harrison Dep. 17:7–12, which meant that Plaintiffs could not turn in the corresponding commission sheet to reflect the hours they worked, Carlton Dep. 24:21–23 ("there's no listing on the commission sheet if there's no ticket to back it up").

**Page 9 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

33.     It is a driver's responsibility to correctly report their time via the commission sheets. Mr. Moody Decl., at ¶ 12; Heverly Decl., at ¶ 18; Miller Decl., at ¶ 12; Martin Decl., at ¶ 10.

**RESPONSE NO. 33:**     Admitted except to the extent to which Defendants told Plaintiffs not to add their time to the Commission Sheets.  *See* Response No. 32, *supra*.

34.     Other tow truck drivers state their pay was always immediately corrected by Tim Moody or Jeff Hooker if there was any discrepancy. Mr. Moody Decl., at ¶ 13; Heverly Decl., at ¶ 9; Wilkinson Decl., at ¶ 10.

**RESPONSE NO. 34:**     Admitted that other tow truck drivers made such statements.  All other allegations are denied.

35.     Tim Moody never told the Plaintiffs they would go unpaid for any of their work, and only Jones speculates that the Defendants intentionally did not pay Plaintiffs for overtime work. Harrison Dep., at 26:17-26:23; Jones Dep., at 16:2-16:7; Jones Dep., at 20:9-20:11.

**RESPONSE NO. 35:**     Denied.  Tim Moody told Harrison that Moody only paid Plaintiffs the time that Moody thought was owed.  Harrison Dep. 8:14–25.

36.     Company procedure allowed Moody to know the number of hours the Plaintiffs reported that they worked based on the commission sheets. Jones Dep., at 13:24-14:4.

**RESPONSE NO. 36:**     Denied.  Plaintiffs were told not to complete tickets for some jobs, Carlton Dep. 24:12–25:2; Harrison Dep. 17:7–12, which meant that Plaintiffs could not turn in the corresponding commission sheet to reflect the hours they worked,

**Page 10 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

Carlton Dep. 24:21–23 ("there's no listing on the commission sheet if there's no ticket to back it up").

37.    There were other instances when the Plaintiffs discussed their hours with Moody or Hooker and were able to assure that their pay was correct. Harrison Dep., at 27:14-28:2; Hooker Dep., at 59:21-60:2; Mr. Moody Decl., at ¶ 17.

**RESPONSE NO. 37:**    Denied.

38.    Harrison admits that he could have sat and talked to Moody or Hooker to resolve the pay discrepancies, but he failed to take advantage of the open-door policy. Harrison Dep., at 31:22-32:4.

**RESPONSE NO. 38:**    Denied.

39.    Other tow truck drivers remember Harrison leaving the company to eat lunch. Heverly Decl., at ¶ 12; Wilkinson Decl., at ¶ 11.

**RESPONSE NO. 39:**    Admitted that other drivers now claim to remember Harrison leaving to eat.  All inferences are denied.

40.    Multiple tow truck drivers remember Carlton eating his lunch in the break room or going to eat lunch outside the facility. Heverly Decl., at ¶ 13; Miller Decl., at ¶ 14; Martin Decl., at ¶ 6.

**RESPONSE NO. 40:**    Admitted that other drivers claim to remember Carlton's eating habits.  All inferences are denied.

41.    Miller remembers seeing Jones leave the yard to get fast food for lunch. Miller Decl., at ¶ 13.

**RESPONSE NO. 41:**    Admitted that Miller claims to remember seeing Jones to leave the yard to get lunch.  All inferences are denied.

**Page 11 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

42.     No current tow truck driver has ever claimed to regularly average 14-21 hours of overtime every week. Heverly Decl., at ¶ 7 Wilkinson Decl., at ¶ 6; Martin Decl., at ¶ 6.

**RESPONSE NO. 42:**     Denied.

43.     The employees work a rotating (week on/week off) call schedule so they are never on call at all times. Mr. Moody Decl., at ¶ 18; Heverly Decl., at ¶ 11; Miller Decl., at ¶ 8.

**RESPONSE NO. 43:**     Denied.  *See, e.g.*, Carlton Dep. 13:17–22 (stating that he was on-call every week while at Lonoke).

44.     There would have never been a reason for Jones to work the alleged amount of overtime on an average week because the Lonoke yard has much less business. Mr. Moody Decl., at ¶ 18; Heverly Decl., at ¶ 15.

**RESPONSE NO. 44:**     Denied.   Jones continued to run service calls for North Little Rock while at Lonoke.  Jones Decl. ¶ 6, ECF No. 20-2.

45.     Ivy Hall and JHook employees are paid better than employees at most other tow truck companies. Mr. Moody Decl., at ¶ 19; Martin Decl., at ¶ 16.

**RESPONSE NO. 45:**     Objection.  Irrelevant.

**Page 12 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**

Respectfully Submitted,

**CASY CARLTON, et al., PLAINTIFFS**

SANFORD LAW FIRM, PLLC
One Financial Center
650 South Shackleford Road, Suite 411
Little Rock, Arkansas 72211
Telephone: 501-221-0088
Facsimile: 888-787-2040

Joshua West
Ark. Bar No. 2012121
west@sanfordlawfirm.com

/s/ Josh Sanford_____
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

## CERTIFICATE OF SERVICE

I, Josh Sanford, certify that on the date imprinted by the CM/ECF system, the foregoing RESPONSE was filed via the Court's CM/ECF System, which will provide notice to the following:

Brian Vandiver, Esq.
bavandiver@csmfirm.com
COX, STERLING, McCLURE & VANDIVER, PLLC
8712 Counts Massie Road
North Little Rock, Arkansas 72113
Telephone: (501) 954-8073
Facsimile: (501) 954-7856

/s/ Josh Sanford_____
**Josh Sanford**

**Page 13 of 13**
**Casy Carlton, et al. v. JHook Investments, Inc., et al.**
**U.S.D.C. (E.D. Ark.) No. 4:17-cv-76-KGB**
**Response to Defendants' Statement of Facts**